# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2022-13**

————————————

**In re KK**
*Petitioner*

**Jason R. HALGREN**
Master Sergeant (E-7), U.S. Air Force
*Real Party in Interest*

————————————

Petition for Extraordinary Relief in the Nature of a Writ of Mandamus

Decided 24 January 2023

————————————

*Military Judge:* Lance R. Smith.

*For Petitioner:* Captain Taracina R. Bintliff, USAF; Devon A. R. Wells, Esquire.

*For Respondent:* Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

*For Real Party of Interest*: Major Heather M. Caine, USAF; Captain Cynthia A. McGrath, USAF.

Before KEY, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Senior Judge KEY delivered the opinion of the court, in which Judge ANNEXSTAD and Judge GRUEN joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

KEY, Senior Judge:

On 21 October 2022, Petitioner—the alleged victim in the proceedings below—requested this court issue a writ of mandamus vacating a military judge's decision to deny a Government-requested continuance. Petitioner further

asked us to find that her access to an attorney should be considered when assessing her availability as a witness at trial "and that her rights may not be used as a sword of the accused." This court docketed the petition on 24 October 2022. We granted the Government and the real party in interest ("the accused") leave to file an answer to the petition and Petitioner the option to file a reply to those answers. Having considered the petition, the answers, and Petitioner's reply, we decline to order the requested relief.

## I. BACKGROUND

The accused is currently facing various charges of sexually assaulting Petitioner in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. According to documents submitted by Petitioner, an assistant trial counsel notified the Air Force Central Docketing Office on 14 September 2022 that the parties had agreed to an arraignment and motions hearing date of 28 February 2023 and a trial date of 13 March 2023 at Spangdahlem Air Base, Germany. The accused's court-martial was subsequently docketed for those dates.

On 23 September 2022, the Government made a motion for a continuance, proposing either to move the trial date earlier—so that trial occurred immediately after motions—or to move the trial date later, specifically to 8 May 2023. According to the Government, this later date is the Defense's "next ready date."

In its motion, the Government indicated that "Government Counsel" learned on 15 September 2022 that neither circuit trial counsel nor Captain (Capt) Bintliff—Petitioner's victims' counsel—were available for the trial date, as they were both detailed to another court-martial scheduled for the same time. The Government further asserted:

> On 15 September 2022, Captain Bintliff consulted with her client, [Petitioner], to determine whether she could be released to accommodate the trial date. [Petitioner] declined to release her representation and stated she was unavailable for the scheduled date. In addition, Captain Bintliff notified the Government that all other Victims' Counsel in Europe were docketed for the same conflicting trial.

No evidence was attached to the motion, and the Government did not request a hearing on the matter. The Government primarily based its motion on the premise that Petitioner is an essential witness, is unavailable, and that the Government lacks subpoena power over her "while she is overseas."

On 30 September 2022, the accused, through counsel, opposed the continuance, objecting to both of the Government's proposed new trial dates. The Defense contended the earlier date would not allow for adequate preparation time

and that the later date prejudiced the accused's speedy trial rights. In its response to the motion, the Defense alleged: "[Petitioner] does not have a personal conflict to the trial dates. . . . She is voluntarily deeming herself unavailable because Capt Bintliff is not available due to Capt Bintliff docketing in another proceeding." In support of this point, trial defense counsel attached a short text message in which Capt Bintliff wrote: "My client will not appear without counsel and she will not get another attorney, so she is personally unavailable for that date." Like the Government, the Defense did not request a hearing on the motion.

The military judge issued a written ruling denying the Government's motion on 3 October 2022. The military judge concluded the Government had failed to establish, by a preponderance of the evidence, that either the circuit trial counsel or Petitioner were unavailable for the court-martial dates, and that Petitioner's victims' counsel's unavailability did not operate to render Petitioner unavailable. He wrote: "Certainly, [Petitioner] can refuse to release her unavailable [victims' counsel], and refuse to participate without her current [victims' counsel]. Those, however, are personal preferences that do not render her unavailable for trial." The military judge determined the Government had not proven Petitioner was actually unavailable, and the Government, therefore, had failed to prove its "essential" evidence was unavailable.

Pointing to this court's ruling in *In re HK*, Misc. Dkt. No. 2021-07, 2021 CCA LEXIS 535 (A.F. Ct. Crim. App. 13 Sep. 2021) (order), *rev. denied, H.K. v. Eichenberger*, 82 M.J. 123 (C.A.A.F. 2022), the military judge asserted that Article 6b, UCMJ, 10 U.S.C. § 806b, does not give a victim (or his or her counsel) the right to request a continuance based on the counsel's schedule, and that it appeared Petitioner's victims' counsel was "attempting to drive a continuance based on her non-availability." The military judge also noted that granting the continuance would "deprive [Petitioner] of her right to proceedings free from unreasonable delay" under Article 6b(a)(7), UCMJ.

Before this court, Petitioner argues the military judge violated her right to be "treated with fairness and with respect for [her] dignity" under Article 6b(a)(8), UCMJ, by: (1) not considering Petitioner's unwillingness to appear at trial without the presence of her counsel, and (2) using Petitioner's "right to proceedings free from unreasonable delay" under Article 6b(a)(7), UCMJ, against her. Petitioner further argues we should employ an "abuse of discretion" standard of review in assessing her petition as opposed to the standard commonly applied for mandamus petitions. The Government avers Petitioner

3

has established neither that we have jurisdiction to hear her claim[1] nor that she was treated unfairly. The accused takes the position that Petitioner has not identified any legal right of hers which was violated. Both the Government and the accused oppose Petitioner's view regarding the appropriate standard of review and maintain Petitioner has not met her burden to warrant the issuance of a writ of mandamus.

## II. LAW

This court has jurisdiction over a petition under Article 6b, UCMJ, which establishes a victim's ability to petition this court for a writ of mandamus when the victim "believes . . . a court-martial ruling violates the rights of the victim afforded" by that article. Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1). If granted, such a writ would require compliance with Article 6b, UCMJ. *Id.*

A writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary cases." *EV v. United States*, 75 M.J. 331, 332 (C.A.A.F. 2016) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)). "Extraordinary writs serve 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction.'" *LRM v. Kastenberg*, 72 M.J. 364, 357 (C.A.A.F. 2013) (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382 (1953)). A military judge's decision warranting reversal via a writ of mandamus "must amount to more than even gross error; it must amount to a judicial usurpation of power . . . or be characteristic of an erroneous practice which is likely to recur." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (per curiam) (internal quotation marks and citations omitted).

In order to prevail on a petition for a writ of mandamus, a petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (per curiam) (citing *Cheney*, 542 U.S. at 380–81).

## III. ANALYSIS

Article 6b, UCMJ, sets out rights held by victims of offenses under the UCMJ. Three specific rights are relevant here: (1) the right not to be excluded

---

[1] On this point, the Government argues we only have jurisdiction over Article 6b, UCMJ, mandamus petitions in which a petitioner presents a "legitimate claim" of a violation of a victim's rights (as opposed to a perceived violation). However, Article 6b(e)(1), UCMJ, specifically permits a petition when a victim "believes" a violation has occurred.

from court-martial proceedings;[2] (2) the right to proceedings free from unreasonable delay;[3] and (3) the "right to be treated with fairness and with respect for the dignity and privacy of the victim."[4]

Petitioner makes a number of interrelated arguments. First, Petitioner contends a petition for a writ of mandamus under Article 6b, UCMJ, should be analyzed under an "abuse of discretion" standard of review rather than the typical standard, as adopted in *Hasan*, 71 M.J. at 418. Second, she asserts the military judge erred in not granting the Government's requested continuance because, in Petitioner's view, the military judge both incorrectly found her "available" for trial and gave unwarranted credence to the accused's demand for a speedy trial—a demand which Petitioner decries as "disingenuous." Third, she claims the military judge did not give appropriate consideration to her victims' counsel's schedule, and that his ruling essentially amounts to unfairly forcing her to sever her attorney-client relationship with her victims' counsel. Fourth, she contends the military judge erred by factoring Petitioner's right to proceedings free from unreasonable delay into his analysis of whether a continuance should be granted—a continuance which Petitioner supported.

## A. Writ of Mandamus Standard of Review

Petitioner contends we should review the military judge's decision for abuse of discretion (or, alternatively, "legal error") rather than under the typical "extraordinary relief" mandamus standard. Petitioner's argument is premised on a 2015 modification to the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.

The CVRA, originally passed in 2004, permits a victim to seek enforcement of his or her rights in the federal district court in which the relevant case is being prosecuted. 18 U.S.C. § 3771(d)(3). If such a victim is denied relief, he or she may petition the court of appeals for a writ of mandamus. *Id.* Article 6b, UCMJ, was enacted to extend victims' rights to victims of offenses under the UCMJ in 2013, but it did not include any sort of enforcement provision. *See* National Defense Authorization Act (NDAA) for Fiscal Year 2014, Pub. L. No. 113–66, § 1701, 127 Stat. 672 (2013). In the years following the CVRA's passage, a split of opinion developed in the federal circuits over what standard of review applied in mandamus petitions brought under the law. *Compare*, *e.g.*, *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (per curiam) (applying usual mandamus standards to a CVRA appeal); *In re Antrobus*, 519 F.3d 1123, 1130 (10th Cir. 2008) (order) (same); *with Kenna v. United States Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (declining to apply usual mandamus standards); *In*

---

[2] Article 6b(a)(3), UCMJ.

[3] Article 6b(a)(7), UCMJ.

[4] Article 6b(a)(9), UCMJ.

*re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 562–63 (2d Cir. 2005) (same). In May 2015, Congress amended the CVRA, specifically 18 U.S.C. § 3771(d)(3), by adding the following language: "In deciding such application, the court of appeals shall apply ordinary standards of appellate review."[5] *See, e.g.*, *In re Wild*, 994 F.3d 1244, 1252 n.8 (11th Cir. 2021), *cert. denied sub. nom. Wild v. United States Dist. Court,* 142 S. Ct. (2022).

Six months later, in November 2015, Congress amended Article 6b, UCMJ, to add an enforcement mechanism, granting victims the ability to petition a Court of Criminal Appeals for a writ of mandamus in the event of an alleged violation of any of the eight rights set out in the act, as well as for alleged violations of Mil. R. Evid. 412 and Mil. R. Evid. 513. NDAA for Fiscal Year 2015, Pub. L. No. 113-291 § 535, 128 Stat. 3292 (2014). Unlike the CVRA provision, the Article 6b, UCMJ, provision does not contemplate a petitioner first raising the matter to trial court. Also absent from Article 6b, UCMJ, is any indication that "ordinary standards of appellate review" were intended to supplant the traditional extraordinary relief standard. The fact this language was not included in the Article 6b, UCMJ, amendments just months after it was added to the CVRA is an indication Congress has provided different standards of review for mandamus petitions brought under the two laws.

Congress has specified that a victim may seek a "writ of mandamus" from the Courts of Criminal Appeals under Article 6b(e), UCMJ. Giving effect to the plain meaning of the words of the statute and the longstanding standard for a petitioner to secure mandamus relief, we conclude Petitioner bears the burden to meet the traditional mandamus standard as set out in *Hasan*, 71 M.J. at 418, and not the abuse of discretion standard which Petitioner encourages us to adopt.

## B. The Military Judge's Determination of Petitioner's Availability

Petitioner's second argument is largely rooted in the question of whether she is "unavailable" for the set court-martial date. Based upon the record before us, Petitioner has said she is unwilling to voluntarily participate in the accused's court-martial as currently scheduled because her victims' counsel cannot attend. Due to the overseas situs of the court-martial, there is no subpoena power to compel Petitioner's presence. *See* Rule for Courts-Martial (R.C.M.) 703(g), Discussion ("A subpoena may not be used to compel a civilian to travel outside the United States and its territories."). Assuming Petitioner's

---

[5] At the time of this amendment, Senator Diane Feinstein explained in the Senate Record that the provision was meant to resolve the circuit split and to avoid "imposing an especially high standard for reviewing appeals by victims, requiring them to show 'clear and indisputable error'" instead of "the ordinary appellate standard of legal error or abuse of discretion." 160 Cong. Rec. S6149, 6150 (daily ed. 19 Nov. 2014).

victims' counsel will not be present at the accused's court-martial, and assuming Petitioner stands fast on her position that she will not testify without her counsel's presence, Petitioner may very well be unavailable for the purposes of that trial. How this translates into a violation of Petitioner's rights or warrants relief for Petitioner is less apparent.

The unavailability of a witness is generally a prerequisite for introducing testimonial evidence by means other than that witness's live testimony. For example, such a witness's prior testimony may be introduced under Mil. R. Evid. 804(b)(1). Similarly, a party may seek a continuance to facilitate the availability of an essential witness. R.C.M. 906(b)(1), Discussion. But these options do not confer any rights upon witnesses or persons of limited standing; instead, they are remedies available to the parties regarding the presentation of their respective cases.

Although we presume Petitioner would be a key witness in the accused's court-martial, Petitioner has not identified any obligation—and we are aware of none—that either party call her to testify. Petitioner has also not alleged any matters will be raised at the court-martial which would trigger her independent rights to participate in the proceedings.[6] Petitioner has the right to observe the accused's court-martial, and—as a named victim—she has the right not to be excluded from those proceedings unless her testimony would be "materially altered" by virtue of watching the court-martial. Article 6b(a)(3), UCMJ. But Petitioner also has the right—in the absence of process compelling her presence—to not attend the accused's court-martial, if she so chooses.

What Petitioner has not identified is any right to have the accused's court-martial dates set such that they accommodate either her or her victims' counsel's schedule. Instead, Petitioner's potential absence more directly impacts the ability of the Government to present its case, which is to say that if Petitioner's live testimony is important to the Government's case, then it is the Government which would seek relief in order to ensure Petitioner's presence. In this

---

[6] Article 6b(a)(4), UCMJ, entitles a victim to be reasonably heard at: (1) pretrial confinement hearings; (2) sentencing hearings; and (3) clemency and parole hearings. *See also* Mil. R. Evid. 412(c)(2) (requiring victims be afforded the opportunity to attend and be heard at hearings related to the admissibility of evidence of his or her sexual behavior or predisposition); Mil. R. Evid. 513(e)(2) (same in cases regarding patients' communications with psychotherapists); Mil. R. Evid. 514(e)(2) (same in cases regarding victims' communications with victim advocates). Should the accused be convicted, Petitioner would have the right to make a sworn or unsworn statement under Rule for Courts-Martial 1001(c), but whether there will be a conviction is speculative at this point.

case, the Government requested a continuance for this very reason. That request was denied, and the Government has not sought relief from our court.[7] Just as Petitioner has no legal ability to force the Government to call her as a witness, Article 6b, UCMJ, does not provide Petitioner with authority to challenge—on the Government's behalf—the military judge's substantive ruling on the continuance motion with respect to such matters as her availability. Victims involved in court-martial proceedings do not have the authority to challenge every ruling by a military judge with which they disagree; but they may assert their rights enumerated in Article 6b, UCMJ, in the *Manual for Courts-Martial*, and under other applicable laws.

## C. Petitioner's Victims' Counsel's Availability

Petitioner argues that the military judge's denial of the Government's continuance request requires her to sever her attorney-client relationship with her victims' counsel. This, however, is a mischaracterization of the military judge's ruling. That ruling has resulted in the accused's trial still being scheduled for the same time as another trial in which Petitioner's victims' counsel is involved. Thus, the ruling means Petitioner's victims' counsel will potentially be unavailable to attend the accused's trial in person if she is obligated to be elsewhere. Even so, Petitioner remains, at a minimum, free to retain counsel who is available to be present at the accused's court-martial instead of—or in addition to—her current counsel; or she can continue with her current attorney-client relationship and participate in the accused's court-martial despite her counsel's inability to be physically present. We appreciate Petitioner's desire to have her currently assigned counsel present at the accused's court-martial. We also appreciate Petitioner's understandable desire to avoid having to forge a new relationship with an unfamiliar counsel. Yet, these desires do not transform the military judge's denial of the continuance into a requirement that Petitioner must sever her existing attorney-client relationship.

The real crux of Petitioner's argument here is her assertion that the military judge did not treat her with fairness as required by Article 6b(a)(9), UCMJ. Petitioner contends the military judge did not consider her counsel's scheduling conflicts, but his ruling refutes this claim—the military judge *did* recognize Petitioner's victims' counsel had a conflict, but he determined that conflict did not render Petitioner unavailable or otherwise justify delaying the accused's court-martial. Petitioner seems to actually be arguing that a "fair" consideration of her counsel's projected inability to be personally present for the accused's court-martial would have resulted in the granting of the contin-

---

[7] Notably, the Government does not join Petitioner's request that the military judge's ruling be vacated.

uance motion. Alternatively, Petitioner may be arguing that granting the continuance would have been tantamount to treating Petitioner "with fairness." Petitioner points to no legal precedent supporting either conclusion.

The first hurdle Petitioner faces is defining what "fairness" means for a victim involved in a court-martial. There is little military precedent regarding the "with fairness" provision found in Article 6b, UCMJ, with one court finding that the provision does not entitle victims to a right to receive discovery (at least "without an analysis of the case status and pending legal issue"). *AG v. Hargis*, 77 M.J. 501, 504 (A. Ct. Crim. App. 2017). With respect to the CVRA, federal courts have found victims' fairness rights implicated by such matters as delays in ruling on victim's motions, *In re Simons*, 567 F.3d 800, 801 (6th Cir. 2009) (order); venue choice, *United States v. Kanner*, No. 07-CR-1023-LRR, 2008 U.S. Dist. LEXIS 108345, at *22 (N.D. Iowa 2008) (order); court decisions to dismiss indictments, *United States v. Heaton*, 458 F.Supp.2d 1271, 1272 (D. Utah 2006) (mem.); and preventing court observers from seeing sexually explicit videos of victims, *United States v. Kaufman*, Nos. 04-40141-01, 02, 2005 U.S. Dist. LEXIS 23825, at *5 (D. Kan. 2005) (mem. and order). If decisions on venue choice and the dismissal of charges impact a victim's right to be treated with fairness, then there seems to be little argument that court rulings which impact the nature and quality of a victim's legal representation similarly impact that right. This is especially true in light of the fact Congress has required the military services to provide legal counsel to victims of sex-related offenses. *See* 10 U.S.C. § 1044e.[8]

While we conclude a victim's legal representation falls within the ambit of a victim's right to fairness, Petitioner does not convincingly explain how that fact leads to the conclusion that the military judge's ruling was wrong or violated her rights. Even those cases identifying particular issues touching on victims' fairness rights do not conclude the lower courts were required to rule a particular way—just that the rights were valid considerations in deciding the issues at hand. Similarly, we conclude that in the context of a motion for a continuance, Petitioner's right to be treated with fairness does not entitle her to a trial date of her choosing, but is rather a factor for the military judge to consider in balancing competing interests and making scheduling decisions. Given the accused has a constitutional right to a speedy trial, and he has asserted that right, Petitioner's argument that the case should be delayed for her benefit definitely faces strong headwinds. Here, the military judge did consider Petitioner's counsel's unavailability, but took issue with the Government's theory that this rendered Petitioner personally unavailable. The military judge

---

[8] Petitioner asserts she is a dependent of an active-duty service member, and therefore entitled to be detailed a victims' counsel. Neither the Government nor the accused dispute this point.

ultimately concluded the Government had failed to prove that Petitioner was actually unavailable, as the Government failed to carry its evidentiary burden.[9] Thus, the military judge's ruling can be read to say more about the quality of the Government's presentation than the dilemma the scheduling confusion had created for Petitioner. In the end, the military judge's ruling on the matter was well within his discretion, and far from a "judicial usurpation of power" or even "an erroneous practice."

## D. Petitioner's Right to Proceedings Free from Unreasonable Delay

Like Petitioner, we are troubled by the military judge's invocation of *Petitioner's* right to proceedings free from unreasonable delay as a reason to deny a continuance which Petitioner plainly supported. Our concern is compounded by the fact that Petitioner was supporting the continuance for the purpose of ensuring in-person legal representation by her detailed victims' counsel—a reason which falls within the ambit of her right to be treated with fairness. We think it would be entirely reasonable to conclude that Petitioner's support of the continuance meant she did not believe the continuance would amount to unreasonable delay or that she wished to waive the matter. The military judge did not provide any substantive analysis of this point; instead, the last line of his written ruling simply reads: "Pursuant to Article 6b(7) [sic], granting the Government's motion would also deprive the named victim of her right to proceedings free from unreasonable delay." This leads us to conclude that this point was not a key factor in the military judge's analysis, but was instead an observation, albeit one of questionable validity. Had this been the sole reason—or at least the driving force—for the military judge's denial of the motion, we might have greater concern regarding the degree to which he treated Petitioner with fairness, but we conclude that is not the case here. The bulk of the military judge's analysis focuses on the Government's failure to prove Petitioner's unavailability as well as the accused's speedy trial rights.

## IV. CONCLUSION

Based on the foregoing, Petitioner has not demonstrated that the right to issuance of the writ she seeks is clear and indisputable, and she has therefore failed to show the appropriateness of the relief she requests.

---

[9] The military judge went so far as to bold and underline the word "proffered" when explaining what information had been presented by the Government before finding there was "no evidence" Petitioner was unavailable for trial. No other words in the ruling received similar emphasis.

Accordingly, the Petition for Writ of Mandamus dated 21 October 2022 is **DENIED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court